UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER MCDANIEL,

            *Plaintiff*,

*v.*

T. BECHARD,

         *Defendant.*

_____/

CASE NO. 18-cv-12843

DISTRICT JUDGE LAURIE J. MICHELSON

MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
(ECF No. 25)**

## I.    RECOMMENDATION

In this prisoner civil rights case, Plaintiff Christopher McDaniel argues that Defendant T. Bechard violated his constitutional rights by (1) failing to train, supervise, investigate, or discipline, and (2) retaliating against him for complaints he made to her supervisor. (ECF No. 22.) Defendant has moved for summary judgment on both claims. (ECF No. 25.) For the reasons that follow, I **RECOMMEND** that Defendant's motion be **GRANTED in part** (as to the failure to train, supervise, investigate or discipline claim) and **DENIED in part** (as to the First Amendment claims).

## II.    REPORT

### A.    Procedural and Factual Background

On September 12, 2018, Plaintiff filed the present action under 42 U.S.C. § 1983. (ECF No. 1). His amended complaint claims that he endured months of verbal harassment

1

by Defendant, an Aramark employee who oversaw Plaintiff's work in the prison kitchen; he repeatedly reported the harassment to her supervisor, Mr. West, culminating on June 8, 2014, when she called him "messier than a baby" while he was working in the TCF kitchen. (ECF No.22, PageID.115-116). In response, he made "child noises," said "Why are you always fucking with me, leave me alone," and threw up his hands. (ECF No.22, PageID.116.) Defendant issued a misconduct accusing Plaintiff of "assault and battery" for striking her, causing Plaintiff to spend two weeks in segregation. (*Id.*) Another staff member submitted a statement supporting Defendant's claim that she was struck by Plaintiff. (ECF No. 25, PageID.205.)

A subsequent misconduct investigation determined that Defendant first reported simply that Plaintiff was disruptive, and only later did she allege an assault. (ECF No. 25, PageID.198.) To the hearing officer, this inconsistency undercut the case against Plaintiff, and the officer therefore "was not convinced the assault occurred and [thus] the prisoner is not guilty." (*Id.*) Plaintiff's later grievance concerning the misconduct report was denied. (ECF No. 25, PageID.207-213.)

Defendant's amended complaint asserts a claim for "Retaliation/For speech (complaints against staff)" under the First Amendment. (ECF No.22, PageID.110.) He adds a claim for "Failure to Act, train, supervise or discipline (on Aramark for policies and customs)." (ECF No.22, PageID.112.) His injuries included headaches, constipation, an upset stomach and stomach cramps, sleeplessness, paranoia, nosebleeds, and vomiting. (*Id.* at PageID.69). He seeks $25,000 in compensatory damages, $750,000 in punitive damages,

2

and an injunction preventing Defendant from working at the facility where he is housed. (ECF No. 22.)

### B.    Legal Standards

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant his or her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment,

3

the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.

Plaintiff's claims come under 42 U.S.C. § 1983. To establish an action under that statute, he must establish: (1) Deprivation of a right "secured by the Constitution or laws of the United States," and (2) that the person causing the deprivation acted "under color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

### C.    Analysis

#### 1.    Official Capacity Claims

As I noted in a prior Report, Plaintiff has not named Aramark as a defendant but by suing Bechard in her official capacity he has, in essence, sued Aramark. (ECF No. 19, PageID.99); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dep't of Soc. Secs.*, 436 U.S. 658, 691 n. 55 (1978)) ("Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.").[1] Also established in the previous Report is Aramark's status

---

[1] This raises an interesting issue that can be avoided here: does it matter that the party who will have to pay if Defendant loses has not been named, and if so what should be done? The Supreme Court has ruled that "[a]s long as the . . . entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166. It's unclear what sort of notice and response opportunity suffices. In dissent, then-Justice Rehnquist considered it a "startling doctrine . . . that a plaintiff may name as defendant only an agent, but nonetheless succeed in imposing damages on the principal who was not named." *Brandon v. Holt*, 469 U.S. 464, 475-476 (1985) (Rehnquist, J., dissenting). Nonetheless, many courts find valid claims against unnamed entities by virtue of official-capacity claims against their agents. *See, e.g.*, *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D. N.Y. 2002) ("Although Davis has not specifically named the Village of Lynbrook as a defendant, he has named the individual defendants in their official capacities. Davis is therefore deemed to have named the municipality as a defendant . . . ."); *Eldridge v. Morrison*, 970 F. Supp. 928, 943 (M.D.

as a state entity for purposes of § 1983. (ECF No. 19, PageID.99-100); *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) ("It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting "under color of state law.""), *abrog. on other grounds as recog. by Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 559 (6th Cir. 2014). Thus, the official-capacity claim against Defendant is tantamount to a claim against Aramark. *See Burke v. Thompson*, 2017 WL 3381367, at *4 (W.D. Ky. Aug. 4, 2017) ("The official—capacity claims against Defendants Aramark employees . . . are actually against their employer, Aramark.").

As with municipalities, private entities who are deemed state actors are not vicariously liable for their agents' wrongs. *Monell*, 436 U.S. at 691-692; *Jackson v. Aramark*, 2017 WL 3176284, at *2 (W.D. Ky. July 26, 2017) (applying *Monell* to an official-capacity claim against an Aramark employee). Instead, to sue such entities, "a plaintiff must prove that the deprivation occurred pursuant to a municipal 'policy or custom.'" *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (*quoting Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994)). A "policy" can be demonstrated by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Monell*, 436 U.S. at 690. A "custom," by

---

Ala. 1996) (construing official-capacity claims as a direct action against the entity); *Stump v. Gates*, 777 F. Supp. 808, 816 n. 3 (D. Colo. 1991) ("[A] § 1983 action appropriately is pleaded against a municipality either by naming the municipality itself or by naming a municipal official in his or her official capacity. . . . Naming either is sufficient. Naming both is redundant."). Assuming, however, that some modicum of notice to the entity is needed in these circumstances, the record here presents no evidence that Aramark received any or has had the opportunity to respond. This can be ignored because, as will be shown, any claims against Aramark fail.

contrast, is a practice "has not been formally approved by an appropriate decisionmaker [but] may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Co. Comm'rs of Bryan Co., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

"One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Harvey v. Campbell Co., Tenn.*, 453 F. App'x 557, 562 (6th Cir. 2011) (citation omitted). "To succeed on a failure-to-train claim, a plaintiff must prove the following: (1) the training was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Thames v. City of Westland*, 310 F. Supp. 3d 783, 800 (E.D. Mich. 2018). But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The municipal policymakers must have notice of gaps in their training programs such that the failure to remedy them demonstrates deliberate indifference. *Id.* "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (citation omitted).

Similarly, a municipality's inaction can prove deliberate indifference:

> A failure to investigate misconduct and punish those responsible can be evidence of a policy of deliberate indifference. *See, e.g.*, *Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir.1989); *Marchese v. Lucas*, 758 F.2d 181 (6th Cir.1985). "However, a municipality's failure to investigate claims of wrongful conduct does not per se mandate a conclusion that the municipality has a policy of tolerating violations of citizens' rights." *McGuire v. Warner*, No. 05–40185, 2009 WL 1210975, at *6 (E.D. Mich.

Apr. 28, 2009) (*quoting Morrison v. Bd. of Trs. of Green Twp.*, 529 F.Supp.2d 807, 825 (S.D. Ohio 2007)). The Sixth Circuit has stated that to establish a municipal liability claim based on an "inaction theory" the plaintiff must show: (1) the existence of "a clear and persistent pattern of illegal activity;" (2) that the defendant municipality had notice or constructive notice of the officer's conduct; (3) the defendant's "tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction;" and (4) that the custom was the cause or direct link to the constitutional violation. *Thomas*, 398 F.3d at 429 (*quoting Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir.1996)).

*Estate of Fahner ex rel. Fahner v. Co. of Wayne*, 797 F. Supp.2d 816, 834 (E.D. Mich. 2011), *set aside in part on other grounds by* 2012 WL 1134743 (E.D. Mich. Apr. 4, 2012).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*," unless it stemmed from an unconstitutional policy traceable to a policymaker; where the policy itself is constitutional, "considerably more proof than the single incident will be necessary" to establish the entity's fault and the nexus between the policy and the constitutional violation. *Okl. City v. Tuttle*, 471 U.S. 808, 824-825 (1985) (Rehnquist, J., plurality opinion); *see also Mann v. Helmig*, 289 F. App'x 845, 851 (6th Cir. 2008).

Plaintiff levels accusations of policies, customs, and failures to act that led to his predicament. (ECF No. 22, PageID.112-113; ECF No. 27, PageID.268-275.) The amended complaint references a "policy that allowed the Defendant to violate the constitution," (ECF No. 22, PageID.112), but as I noted in a prior Report, no "official policy of Aramark's" is discussed. (ECF No. 19, PageID.100). Nor does Plaintiff's response to the present motion pin the policy to an official pronouncement or produce evidence to that effect. He instead simply asserts that the phantom policy permits staff to fabricate

misconduct reports. (ECF No. 27, PageID.270 ("To falsify the interview section of the grievance and not investigate my complaint amounts to an official policy of inaction."); *id.*, PageID.272 ("Furthermore, the custom/Policy of allowing staff to write/interpret incidents of misconducts however they feel to do so without necessary provisions of misuse. . . . The policy/custom alots [*sic*] for what's called creative writing. Creative writing could be blantantly [*sic*] imaginative without consequence.").) Because he has not shown any pronouncement or decision officially sanctioned by policymakers, he has failed to demonstrate a relevant policy. *See Monell*, 436 U.S. at 690.

Rather, his contentions are better seen as alleging a practice so widespread that it amounts to a custom. *See Brown*, 520 U.S. at 404; *see also* (ECF No. 19, PageID.100-101). The primary thrust of his argument is that Aramark gave its employees carte blanche to falsify misconduct reports without risking punishment. (ECF No. 27, PageID.270-272.)

Neither Plaintiff's allegations nor the record, however, establish this custom. Because he's not challenging a policy as facially unconstitutional, he must show more than a single instance of the custom. *Tuttle*, 471 U.S. at 824. But, at best, he can hope to show only one falsified misconduct report. And even that's not entirely clear: the hearing officer reviewing the report found Defendant's statements inconsistent and thus insufficient to warrant discipline, but he made no express finding that the report was fabricated. (ECF No. 25, PageID.198.) As such, to prove even a single instance of falsification, Plaintiff would need to demonstrate that Defendant and the staff member who supported her allegation lied regarding the assault. Even assuming he's raised a question of fact on that point, the factual

dispute is not material because it represents a lone occurrence. *Tuttle*, 471 U.S. at 824-825. Nothing indicates that similar mendacity was rampant enough to constitute a custom.

Plaintiff's contentions regarding the failure to train, supervise, investigate, or discipline appear aimed at Mr. West and Aramark in general, not Defendant, who is nowhere shown to have disciplinary authority or to have failed in exercising any supervisory power. Of Mr. West and Aramark, he says:

> Mr. West has nothing to do with discipline sought. The discipline the Plaintiff sought was for the failure to discipline for the falsified misconduct. . . . Mr. West failed to discipline during the complaints of harassment, but Aramark Co, failed to discipline when staff was found to be in violation of policy for falsifying the misconduct when on notice from the grievance.

(ECF No. 32, PageID.348.)[2] He claims that Mr. West should have investigated the accusations, which would have deterred Defendant from submitting the false report. (ECF No. 27, PageID.269-271; *see also* ECF No. 22, PageID.114 (noting that Mr. West "failed to act in disciplining or further training when the harassment started and continued by defendant leading to Plaintiffs injury when reported," *i.e.*, the false misconduct report.)

Plaintiff has not created a genuine issue of material fact regarding this claim. For one thing, he has not articulated or presented evidence of any inadequacies in training or supervision. Nothing is said about the proper standards for judging the training and supervision other than his own unsupported statements that Mr. West should have

---

[2] The above quotation comes from Plaintiff's sur-reply. Defendant objects to this filing because Plaintiff failed to obtain permission before filing it. (ECF No. 33.) True, the local rules require a party to obtain permission to file a sur-reply, E.D. Mich. LR 7.1, and Plaintiff never did so. While this rule violation gives grounds to ignore the brief, Plaintiff's oversight can be excused because he is pro se. *See generally Hill v. Walker*, 2015 WL 5211919, at *8 (E.D. Mich. Aug. 31, 2015). In any event, nothing in the sur-reply proves to be a winning argument for Plaintiff, and thus Defendant suffers no prejudice from considering it.

investigated further and Aramark should have punished Defendant. These assertions are not evidence of what a reasonable training or supervisory program should look like.

Setting that aside, however, other problems remain. Plaintiff's own deposition testimony undercuts his assertion that Mr. West should have done more. The first time he complained to Mr. West was about Defendant's forcing him to switch duties mid-shift from trash collection to passing out clean cups. (ECF No. 25, PageID.162-163.) This was unsanitary, in Plaintiff's opinion. (*Id.*) According to Plaintiff, Mr. West "let me know it wouldn't happen again and, you know, she was right there so . . . the message was obviously to her as well." (ECF No. 25, PageID.164-165.) Defendant told Mr. West she would stop and, per Plaintiff's testimony, "it never happened again." (ECF No. 25, PageID.166.) It's hard to see any inadequacy in training or supervision when Plaintiff's complaint succeeded in obtaining his sought-after relief. As such, this episode is not evidence creating a material factual dispute.

Plaintiff's other discussions with Mr. West involved his complaints about Defendant's rudeness and her threats to fire him. (ECF No. 25, PageID.167-170.) On one occasion, she had asked Plaintiff to clean areas assigned to other workers, which he would have "no problem" doing if he and Defendant "had a better rapport." (ECF No. 25, PageID.170.) Plaintiff testified that Mr. West promised to discuss the matter with Defendant. (ECF No. 25, PageID.168-169.) When Plaintiff demanded that Defendant be called into the office, Mr. West complied, giving Plaintiff the opportunity to directly express his displeasure. (ECF No. 25, PageID.173-174.) Mr. West followed by stating they all needed to get along "and that it shouldn't be anymore of, you know, the rude behavior

coming from Ms. Bechard." (*Id.*) Plaintiff "was satisfied with the meeting," and opined that "everything was said right in the meeting," but he "knew nothing was going to stop." (ECF No. 25, PageID.174.) A few days later, Defendant allegedly threatened to fire Plaintiff if he slipped up. (ECF No. 25, PageID.175.) She had made such threats in the past, but after this one, Plaintiff had "no more negative contact" with Defendant until the misconduct report. (ECF No. 25, PageID.178-179.)

As with the other episode involving Mr. West, Plaintiff has failed to specify any inadequacies in training or supervision in Mr. West's actions, or any proof that further investigation was warranted. Plaintiff admits that Mr. West complied with Plaintiff's demand that Defendant be brought in and that, aside from her threat to terminate him, the negative encounters until the misconduct report. It is unclear, then, how the training and supervision were flawed, what more should have been investigated, or what discipline should have been imposed. In a similar manner, Plaintiff cannot show that the testimony above recounts a clear and widespread pattern of illegal conduct, such that the failure to do more is tantamount to a custom. *Estate of Fahner*, 797 F. Supp. 2d at 834. He has not produced any other evidence showing other analogous wrongful conduct that would suggest a wider web of overlooked illegality.

More than that, Plaintiff has not shown that any inadequacies are closely related to or actually caused his injury, which resulted from the false misconduct report. *Thames*, 310 F. Supp. 3d at 800; *Estate of Fahner*, 797 F. Supp. 2d at 834. He says that the episodes above led to the report, but does not say how. (ECF No. 27, PageID.269-271; *see also* ECF No. 22, PageID.114.) Presumably, he means to suggest that, emboldened by the near

immunity Mr. West had bestowed on her, she felt free to ramp up her campaign against Plaintiff by falsifying the misconduct report. But no such immunity was granted, as demonstrated above—Plaintiff's recounting of his complaints shows that Mr. West took some actions that were effective in addressing Plaintiff's problems. Even if not, Mr. West's training and supervision could hardly be considered a but-for cause of the misconduct report—the report could have been ginned up regardless of anything Mr. West did or didn't do.

And those actions or inactions were not closely related—or a proximate cause—of the report. Their relation to Defendant's alleged falsification must be mediated through several layers of speculative intervening causes, the fuzziest but most crucial of which is whatever lessons Defendant took from Mr. West's discipline (or failure to discipline) that caused her to feel unconstrained by discipline.[3] And even if that hazy emotional link could be established, the fact remains that Mr. West could not have foreseen that his actions or inactions would result in Defendant's fabricating a report. Nothing Plaintiff had told him suggested that Defendant was liable to trump up charges—it is one thing to be rude and unsanitary, it is quite another to exact revenge through lies. Consequently, I cannot see any causal connection between Mr. West and Plaintiff's injury.

As for any arguments relating to Aramark (independent of Mr. West), the most glaring problem with Plaintiff's contention that Aramark failed to accede to his grievance

---

[3] Defendant's motivations resulting from Mr. West's disciplinary or supervisory actions (or inactions) are, of course, separate from the motivations she might have had due to Plaintiff's complaints, as discussed below.

and punish Defendant is that nothing suggests Aramark is in charge of the Michigan Department of Corrections' (MDOC's) grievance process. *See* (ECF No. 31, PageID.318 ("Plaintiff repeatedly confuses various MDOC personnel with Aramark personnel in attempting to establish his claim. Defendant is not responsible for the policy of staff to write or interpret grievances; that is an MDOC policy.") Indeed, the grievance procedures at the time of these events (and now) are run by MDOC personnel. *See* MDOC PD 03.02.130(N)-(O) (eff. 07/09/2007); *see also* MDOC PD 03.02.130(O)-(P) (eff. 3/18/2019).

Moreover, even if this argument were aimed at the correct target, it is not clear what inadequacies in training or supervision Plaintiff means to flag here, nor is it apparent what pattern of conduct Aramark was overlooking with regard to the misconduct report (the gravamen of the grievance). The underlying factual basis for his argument appears to be that "[t]he misconduct investigation and administrative hearing clearly states [*sic*] the Defendant was found to have falsified the misconduct in its findings." (ECF No. 22, PageID.116; *see also* ECF No. 32, PageID.340-341 ("The Defendant was found by the State's fact finder (hearings officer) to have purposely written a falsified misconduct against the Plaintiff.").) That's incorrect. The findings were that Defendant made inconsistent statements and for that reason, among others, there was insufficient evidence to find Plaintiff guilty. (ECF No. 25, PageID.198.) This is not equivalent to a finding that Defendant falsified her report. Indeed, her "inconsistent" statements were not logically inconsistent. Her original statement that Plaintiff was being disrupted does not contradict

her later statement that he struck her: both could be true. (*Id.*)[4] As noted, the report never purports to find Defendant guilty of falsification. Therefore, Plaintiff's factual grounds are mistaken.

For these reasons, I suggest Plaintiff has failed to raise a genuine issue of material fact regarding his claim of failure to train, supervise, investigate, and discipline.[5]

## 2.      First Amendment Retaliation

Defendant argues that Plaintiff's First Amendment retaliation claim fails on the facts and, alternatively, she merits qualified immunity. (ECF No. 25, PageID.144-147, 152-156.) A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct '"does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations omitted). As such, once the defense is raised, Plaintiff bears the burden

---

[4] This is not to say that the failure to mention the assault in the first instance offers no support for Plaintiff's retaliation claim. As a matter of logic, however, the statements can coexist.

[5] Because I agree with Defendant on this point, (ECF No. 25, PageID.149-152), I will not reach her alternative argument that Plaintiff failed to exhaust his grievance with regard to this claim, (ECF No. 25, PageID.147-149).

of demonstrating that the defendant official (1) violated a statutory or constitutional right, and (2) "the right was clearly established at the time of the challenged conduct." *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). The facts are to be "viewed in the light most favorable to the plaintiff[.]" *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

In this case, defendant does not dispute the first two elements of the retaliation claim. (ECF No. 25, PageID.144-147.) Briefly, as to the first, it is well-established that oral grievances—like those Plaintiff lodged with Mr. West and that form the basis for his claim—constitute protected activity. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) (citing, among other cases, *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] . . . constitutes protected activity under the First Amendment." (alterations in original))).

Regarding the second element, "the Sixth Circuit has held that charging an inmate with a major misconduct violation is sufficiently adverse to 'deter a person of ordinary firmness from the exercise of the right at stake.'" *Carter v. Dolce*, 647 F. Supp. 2d 826, 834-835 (E.D. Mich. 2009) (citation omitted). Even a minor ticket can be adverse depending on "both the punishment [the plaintiff] could have faced and the punishment he ultimately did face." *Maben*, 887 F.3d at 266. Here, the alleged misconduct—assault and battery—was a Class I violation that could lead to punitive segregation, toplock, and loss of privileges, among other things. (ECF No. 25, PageID.231, 237.) Although he was ultimately found not guilty, he spent two weeks in segregation. (ECF No. 25, PageID.189.) In the absence of any argument to the contrary, I find this sufficient to constitute an adverse

15

action. *Cf. Maben*, 887 F.3d at 270 ("[W]e have held that being confined in administrative segregation for five days constituted a sufficiently adverse action." (*citing Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000))).

The third element of retaliation, causation, focuses on the defendant's motive. *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007). Because "[m]otive is often very difficult to prove with direct evidence in retaliation cases," the Sixth Circuit has stated that "[c]ircumstantial evidence may therefore acceptably be the only means of establishing the connection between a defendant's actions and the plaintiff's protected conduct." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). The framework for addressing this element consists of shifting burdens: "[a]fter a plaintiff shows that his protected conduct was a motivating factor in the defendant's action, the defendant may thwart the retaliation claim by showing that it would have taken the same action even without the protected activity." *Id.* at 441-442. Generally, "the question is a factual issue to be resolved by a jury." *Maben*, 887 F.3d at 267 (*quoting Harris v. Bornhorst*, 513 F.3d 503, 519-520 (6th Cir. 2008)).

Defendant claims that Plaintiff cannot show causation. (ECF No. 25, PageID.145.) The misconduct ticket, Defendant relates, came weeks after Plaintiff's protected speech. (*Id.* (*citing* ECF No. 25, PageID.176).) What's more, Defendant argues, Plaintiff had complained about Defendant multiple times without suffering any reprisals and he never mentioned retaliation to the hearing officer investigating the misconduct report. (*Id.*) Defendant then cites her affidavit, and that of her corroborating co-worker, as evidence of her good-faith belief Plaintiff struck her. (*Id.*)

16

I do not find this argument convincing. To begin, Defendant's contentions about the weeks separating Plaintiff complaints from the alleged retaliation is questionable at best. The page Defendant cites for this proposition, PageID.176, says nothing expressly about the topic, and Defendant has not provided the preceding or subsequent transcript pages that might illuminate whether anything on PageID.176 implicitly helps construct the chronology of events. In fact, according to Plaintiff's testimony, everything happened within the span of a month: he began work in the kitchens on May 10, 2014, and the incident occurred on June 8, 2014. (ECF No. 25, PageID.161.) He was complaining throughout this period, so unless those talks with Mr. West were bunched at the beginning of this month, it seems likely that his last complaint was a couple weeks, at most, prior to the alleged retaliation. Defendant also glosses over Plaintiff's testimony that throughout his time under Defendant, she was threatening to fire him, including one such threat after a discussion they had with Mr. West to address Plaintiff's complaint. (ECF No. 25, PageID.178.)[6] At the very least, this suggests that Defendant was biding her time before she retaliated.

---

[6] Defendant denies ever attending these meetings, but she does so only in her brief, without presenting any affidavits or testimony to that effect. (ECF No. 25, PageID.147 n.6.) In any event, the facts are construed favorably to Plaintiff and her denial merely creates a factual issue on a material topic, *i.e.*, the basis for her motivation to retaliate. For that reason, also, Plaintiff's argument that Defendant has acknowledged knowing of his complaints is irrelevant at this juncture. (ECF No. 27, PageID.256.) He clutches onto her statement that she "wrote this misconduct ticket without regard to any speech or complaints by Plaintiff," (ECF No. 25, PageID.216), construing it as an admission she knew of the complaints, (ECF No. 27, PageID.256). Defendant might dispute that, and it could become an issue of fact, but the liberal reading of the evidence owed to Plaintiff and Defendant's failure to argue this issue now means I must assume for purposes of the motion she had knowledge of the complaint. (ECF No. 31, PageID.315.)

Regardless, Defendant does not offer support for the conclusion that a few weeks' time is evidence that she lacked retaliatory motivation. Courts, including the Sixth Circuit, have noted that a two-week gap *favors* a finding of causation because it suggests motivation. *See Stallworth v. Tyson*, 578 F. App'x 948, 951 (11th Cir. 2014); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003). Thus, the temporal proximity here *supports* an inference of causation. Plaintiff's persistent complaints concerning Defendant preceded the alleged retaliation by a matter of a couple weeks at most. And her threats could be seen as conveying her intention to wait for the opportunity to retaliate.

The alleged falsity of Defendant's report also weighs against her argument. Plaintiff claims the alleged assault is a lie; Defendant protests that it happened. In his corner are the materials gathered during the misconduct investigation as well as the hearing officer's findings. These documents include statements by prisoners that they didn't see anything, a report that Defendant initially failed to report the assault and instead claimed Plaintiff was simply disruptive, and the hearing officer's report itself. (ECF No. 25, PageID.198-199, 201-202.) On Defendant's side are the statements by Defendant's co-worker that he observed the assault. (ECF No. 25, PageID.200, 205.) This evidence creates a factual issue regarding whether an assault occurred and thus whether Defendant falsified the report. A false report could be evidence of retaliation. As the Second Circuit has observed in like circumstances, "A false reason for the report's issuance would support the inference that the real reason was the improper one: retaliation." *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002).

For these reasons, I suggest Plaintiff has met his burden to show questions of material fact regarding Plaintiff's motivation. As such, the burden shifts to Defendant, who argues that regardless of Plaintiff's protected conduct, she would have taken the same action. (ECF No. 25, PageID.146-147.) She appears to provide two reasons for this. One is that she believed she was struck and therefore would have submitted the same misconduct report. (ECF No. 25, PageID.146-147.) This simply highlights the factual dispute concerning whether her report was false or not. If she shows a good-faith belief that she was struck, and that this belief motivated her report, then she might prevail. But as discussed above, there is evidence calling into question her report's accuracy—if the report is false, an inference could arise that she was motivated by Plaintiff's protected speech.

Her second rationale is that "even if it is determined that Plaintiff did not strike Defendant, his conduct nonetheless rises to the level of a Class I misconduct, resulting in the same sanctions and punishments as the assault and battery misconduct ticket that he received (which requires contact)." (ECF No. 25, PageID.146.)[7] According to Defendant, (*id.*), Plaintiff's admitted conduct—throwing up his hands and yelling, which Plaintiff said "might have startled" Defendant or "probably" intimidated her, (ECF No. 25, PageID.189-190)—constitutes the Class I offense of "Threatening Behavior," defined as "[w]ords, actions, or other behavior which expresses an intent to injure or physically abuse another

---

[7] This discussion directly *precedes* her first reason why she has carried her burden, *i.e.* that she would have filed the same report because she believed he struck her. She does not explicitly say that the second reason relates to her effort to carry her burden. But it is hard to see how this second rationale would relate to Plaintiff's initial burden—the fact that he could have been disciplined for his rudeness or threatening manner (independent of the assault) does not negate or counter any of the evidence Plaintiff offered concerning her motivation. Consequently, I consider this discussion as part of her attempt to satisfy her burden.

person. Such misconduct includes attempted assault and battery." (ECF No. 25, PageID.233.)

Defendant's argument fails to persuade. For one thing, she has not testified or presented any affidavit that she would have filed a misconduct report for anything other than the assault. Thus, this argument rests on an assertion made in her brief, and consequently it is not evidence for purposes of her motion. *See Hill v. Walker*, 2015 WL 5211919, at *10 (E.D. Mich. Aug. 31, 2015) ("[S]tatements in a party's brief are not admissible and are not in Rule 56's list of evidence the Court can consider."). Defendant has not put forth enough evidence to "establish[] as a matter of law that [Plaintiff] would have been punished to the same extent he was punished in the absence of retaliatory motive." *Gayle*, 313 F.3d at 684. There have been no findings or even an investigation into whether Plaintiff's conduct falls within "Threatening Behavior." Although he admitted she *might* have been "startled," he has not confessed to conveying an intent to injure or abuse her.

More importantly, while both assault and "Threatening Behavior" are Class I misconduct, and the same range of punishment applies to each, it is not clear that he would have faced the same potential punishment. (ECF No. 25, PageID.233.) The sanctions provision lists punishments and states that "[t]he hearing officer shall impose one or more of the following sanctions upon a finding of guilt with the maximum reserved for only the most serious or persistent violators." (*Id.*) The hearing officer thus has discretion, and it is quite possible assault would be punished more severely than would "Threatening Behavior," which is tantamount to *attempted* assault—at the very least, no evidence has

20

been submitted on this question. And the answer to it matters, as the Sixth Circuit has held

that receiving a harsher penalty suffices:

> [the plaintiff] alleges retaliation not because he received *a* penalty, but
> because he received the harsher of two possible penalties. [The defendant's]
> entitlement to summary judgment hinges on her showing that she would have
> issued the *same* penalty regardless of the grievances . . . . She did not offer
> such evidence.

*Marr v. Fields*, 420 F. App'x 499, 500-501 (6th Cir. 2011). The same is true here, and thus

Defendant is not entitled to summary judgment based on the bare possibility that Plaintiff

could have received the same penalty for different misconduct.

Finally, Defendant is not entitled to qualified immunity. After reciting the

background law, her analysis of the question is as follows:

> In this case, as previously stated, Plaintiff has failed to establish a violation
> of his constitutional rights. Further, in 2014, it was not clearly established
> that Ms. Bechard was required to take any steps to confirm or corroborate
> her understanding of events prior to drafting a misconduct ticket, or that
> issuing a misconduct ticket on allegedly mistaken facts constituted a
> constitutional violation. Ms. Bechard is accordingly entitled to qualified
> immunity and, consequently, summary judgment.

(ECF No. 25, PageID.156.) The argument misconstrues the nature of the alleged

constitutional violation. It was not that a mistake led to an incorrect misconduct report; it

was that (as Plaintiff claims) she falsified a misconduct report in retaliation for Plaintiff's

protected speech.

When the claim is characterized correctly, the caselaw is clear that Defendant is not

entitled to qualified immunity. The Sixth Circuit, speaking about matters that occurred in

2015, has stated, "we think that a reasonable prison officer would have been aware that

issuing a misconduct ticket, even a minor misconduct ticket, in retaliation for the inmate's

21

exercise of his First Amendment rights could give rise to constitutional liability." *Maben*, 887 F.3d at 270. Accordingly, the court rejected an argument for qualified immunity. *Id.* Even earlier, and more directly, the Sixth Circuit explained that "[t]his court has previously held that—at least as of 1995—a prisoner's 'right to be free from retaliation, in the form of the issuance of a false major misconduct ticket, against the exercise of his First Amendment rights' is clearly established for purposes of qualified immunity." *Scott v. Stone*, 254 F. App'x 469, 475 (6th Cir. 2007) (*quoting Scott v. Churchill*, 377 F.3d 565, 571-572 (6th Cir. 2004)). Consequently, the alleged conduct was clearly unconstitutional circa 2014, which means Defendant cannot claim qualified immunity.

### D. Conclusion

For the reasons above, I **RECOMMEND** that Defendant's motion be **GRANTED in part** (as to the failure to train, supervise, investigate or discipline claim) and **DENIED in part** (as to the First Amendment claims).

## III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some

objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: November 26, 2019

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Christopher McDaniel #720417 at Lakeland Correctional Facility, 141 First Street, Coldwater, MI 49036.

Date: November 26, 2019

By s/ Kristen Castaneda
Case Manager